PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRADY LAPLANTE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>METAFIT PHARMA SOLUTIONS LLC, a California LLC d/b/a TrimRx.com,<br><br>Defendant. | Case No. 3:26-cv-02701-AGS-MMP<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR UNLAWFUL SPAMMING AND INVASION OF PRIVACY**<br><br>Assigned for all purposes to:<br><br>**Judge Andrew G. Schopler** |

## I. NATURE OF ACTION

1. Defendant METAFIT PHARMA SOLUTIONS LLC d/b/a TRIMRX.COM and its affiliate marketers (collectively, "TRIMRX.COM") blankets Americans with illegal spam. It deploys every tactic in the proverbial playbook — false and misleading subject lines, spoofed domains, and falsified headers — to trick unwary recipients into opening messages they would otherwise ignore. In short, Defendant is the definition of a company that profits from everything that people ***hate*** about modern spam abuse.

2. The harm does not stop at the inbox. After being deceived into engaging with the spam, spam recipients like Plaintiff are funneled to Defendant's website at **TRIMRX.COM**, where Defendant installs a web of illegal tracking pixels on their devices. Those tracking technologies enable Defendant and its partners to monitor visitors' behavior across the internet, converting a single deceptive email into ongoing digital surveillance.

3. Both the spam and the surveillance are illegal under California law.

## II. PARTIES, JURISDICTION AND VENUE

4. Plaintiff is and was at all times mentioned herein a citizen of the State of California. Earlier this year, he received a misleading spam e-mail from Defendant, was tricked into opening the spam, and then visited Defendant's website at TrimRx.com.

5. TRIMRX.COM owns and operates a telehealth platform, TrimRx.com. It is a limited liability company incorporated in California. Defendant is therefore a citizen of California for purposes of diversity jurisdiction.

6. This Court has subject matter jurisdiction of this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), because: (i) there are 100 or more class members including citizens of all fifty states who own or operate a "California e-mail address" as defined by statute; (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs – indeed, the total amount in controversy is believed to exceed $50,000,000; and (iii) there is at least minimal diversity because at least one Plaintiff and Defendant are citizens of different

states, because included in the plaintiff class are citizens of all fifty U.S. states. To the extent that Defendant's citizenship is determined by its members, at least some members of the class in the fifty U.S. states are diverse from at least one member of Defendant. Accordingly, minimal diversity exists.

7. Venue Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2). Defendant MetaFit Pharma Solutions LLC is headquartered in this District, resides in this District for venue purposes, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Defendant directed, authorized, controlled, or benefited from the commercial email advertising campaign and the operation of the website giving rise to this action from its headquarters located within the Southern District of California.

## III. FACTUAL ALLEGATIONS

8. Plaintiff is a California citizen and is the owner of the e-mail address **bradyl9@aol.com**. Defendant spams plaintiff and other class members relentlessly. He has received over a dozen unwanted spam e-mails from Defendant, one of which is attached hereto as **Exhibit "A".**

9. The e-mail advertised Defendant's weight-loss products and services. The body of the Subject Email contained a hyperlink/call-to-action button that directed recipients to Defendant's website, TRIMRX.COM, where Defendant marketed and sold its GLP-1 weight-loss program. Plaintiff initially opened the Subject Email because the sender information appeared to suggest an official or legitimate communication relating to marijuana regulation. After opening the email, Plaintiff relied upon the additional misrepresentations contained in the body of the email—including the advertised $200 discount — and clicked Defendant's advertising link because he believed Defendant was genuinely offering the represented promotion and was ultimately redirected to Defendant's website. The Subject Email therefore advertised Defendant's products and services within the meaning of Business and Professions Code section 17529.5.

10. Defendant knowingly utilizes affiliate marketers and lead-generation partners to advertise its products through commercial email campaigns. Defendant compensates such affiliates based upon consumer referrals, purchases, qualified leads, clicks, or other performance metrics, authorizes affiliates to promote Defendant's products, accepts the benefits of those campaigns, and knowingly receives customers generated by those commercial email advertisements. The Subject Email was transmitted as part of that affiliate marketing program and promoted Defendant's products through Defendant's authorized advertising channel.

11. The Subject Email identified itself as being sent from 'Weight Loss Support' using the email address info@4twenty.us, utilized a Reply-To address different from the purported sender, failed applicable authentication protocols including SPF, DKIM and/or DMARC, falsely represented the source of the email, and employed the misleading subject line '$200 Off Clinician-Guided GLP-1 Support.'

12. The preceding is just a single example of the spam that Defendant sends to class members. Based on publicly available sources, it is believed that TRIMRX.COM is responsible for over 100,000 spam e-mails to individuals in all 50 states who own California e-mail addresses each year.

13. The spam identified above is an “Unsolicited Commercial e-mail advertisement” because plaintiff had no pre-existing relationship with Defendant and because the e-mail was initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit. *See* Bus. & Prof. Code § 17529.1(c). Likewise, Plaintiff has never given “direct consent” to receive commercial e-mail advertisements from Defendant or its marketing agents.

14. The above spam violates Bus. & Prof. Code § 17529.5(a)(1) because it uses the domain **4twenty.us** without permission and because that domain is not readily traceable to Defendant. As shown above, the spoofed and falsified domain tricked plaintiff into engaging with the e-mail and visiting Defendant’s website to investigate it.

15. The spam violates Bus. & Prof. Code § 17529.5(a)(2) because the header information is falsified and deceptive, including the use of a “from” name, return address, and domain that does not accurately identify the party who initiated the email. As shown above, the deceptive header information tricked Plaintiff into engaging with the e-mail and visiting Defendant’s website to investigate it. Likewise, nothing in the header permits a recipient — or a reasonable investigator using publicly available tools such as WHOIS — to determine who actually sent or authorized the email. Indeed, Plaintiff attempted to determine the identity of the sender by conducting a WHOIS search for the domain 4twenty.us, the domain from which the Subject Email purportedly originated. That search did not identify the sender or otherwise reveal any information from which the sender could reasonably be identified. Plaintiff then attempted to visit www.4twenty.us directly. Rather than reaching a legitimate commercial website, Plaintiff was presented with a browser security warning advising that the website had been flagged as a suspected phishing website that could attempt to steal personal or financial information from visitors. The inability to identify the sender through publicly available registration information, coupled with the fact that the purported sender's domain resolved to a website identified as a phishing threat, demonstrates that the sender information contained in the Subject Email was materially false, misrepresented, and intentionally designed to conceal the true identity of the advertiser in violation of Business and Professions Code section 17529.5(a)(2). A recipient exercising reasonable diligence could not determine the identity of the sender from the information contained in the Subject Email.

16. The spam violates Bus. and Prof. Code § 17529.5(a)(3) because the subject line **“$200 Off Clinician-Guided GLP-1 Support”** is materially misleading by conveying a concrete and quantifiable discount that does not in fact exist. ***First***, the representation of “$200 Off” is **literally false** – plaintiff could not find any such genuine discount anywhere on the website, period. ***Second***, even if some purported discount exists, the representation is still be deceptive because it is not tied to any *bona fide* or

prevailing reference price, but instead appears is an evergreen or perpetual "discount" untethered to any prior or actual higher price, thereby creating the false impression of savings where none exist. By combining a specific but nonexistent price reduction with implied medical legitimacy and failing to disclose the absence of a real reference price, the subject line misleads reasonable consumers into believing they are receiving a limited, meaningful financial benefit when, in reality, no such genuine discount exists.

17. The foregoing misrepresentations were material because they were deliberately selected to increase the likelihood that recipients would open the Subject Email, trust its contents, and click on Defendant's advertising links. Had the Subject Email accurately identified its commercial source, accurately identified Defendant or its affiliate marketer, and truthfully described the advertised offer, Plaintiff would not have opened the email, interacted with it, or visited Defendant's website. The deceptive sender information and misleading subject line therefore materially influenced Plaintiff's conduct.

18. Although a plaintiff need not plead or prove actual damages to bring a claim under the statute, Plaintiff has in fact suffered concrete, particularized harm as a result of Defendant's conduct – in addition to the statutory injury entitle plaintiff to damages. Plaintiff spent valuable time and attention investigating the misleading offer; searching the WHOIS database to learn who the e-mail came from; incurred opportunity costs and lost productivity; and suffered depletion of device and network resources, including storage space, bandwidth usage on a metered data plan, and battery life.

19. The unauthorized domain name, misleading headers and subject lines also invaded Plaintiff's privacy and disrupted the ordinary use and enjoyment of Plaintiff's email account, diminishing its value as a communication tool and necessitating additional filtering and security precautions. These injuries were directly caused by Defendant's unlawful email and are redressable by statutory and injunctive relief.

20. Defendant has not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail

advertisements. In fact, Defendant actively defies California law, as shown by the fact that Defendant continues to spam California residents despite being notified of its illegal conduct.

21. Going from bad to worse, after luring Plaintiff to its website at TrimRx.com via the misleading spam, Defendant illegally installed numerous tracking pixels ("Tracking Pixels") on Plaintiff's device that allow various *de facto* data brokers **(including Google Ads/Analytics)** to (1) intercept communications from Plaintiff and track Plaintiff across the internet and (2) use those communications to compile and sell deeply personal details about Plaintiff to the highest bidders. Defendant does this to ***everyone*** who it lures to its site.

22. In short, Defendant has installed the Tracking Pixels to track signals generated by internet users (thus operating as a "Trap and Trace" device) to compile the dossiers described above and sell the information to the highest bidders. By doing so, Defendant has violated California Penal Code § 638.51.

23. The Tracking Pixels use algorithms to analyze internet and device data and predict whether two or more devices are owned by the same person. Participating websites and apps then cater their advertisements based on a collective knowledge of the user's actions across all of their devices. The Tracking Pixels use data such as cookie IDs, operating system IDs, IP addresses, online registrations, and data from partnering publishers to develop a probability that different devices are shared by the same person.

24. The tracking technology performs independently captures routing, addressing, signaling, and source-identifying information automatically transmitted by Plaintiff's browser during electronic communications with Defendant's website. Specifically, upon Plaintiff's arrival at TRIMRX.COM, the tracking technology automatically intercepted and collected Plaintiff's IP address, HTTP request headers, referring URL, browser identifiers, user-agent string, operating system information, network identifiers, device identifiers, session identifiers, page-request information, and

other routing and addressing information identifying the source of Plaintiff's electronic communications before Defendant served the requested webpage.

25. The Tracking Pixels are used for advertising to consumers across devices, where a user is shown an ad on their mobile or tablet device based on websites they visited on a desktop. For example, if an Android phone visits a website shortly after a desktop PC from the same home network, the Tracking Pixels will assess that there is a high probability that the two devices are operated by the same person and will show them similar ads on both devices. The Tracking Pixels also use cross-device analytics for things like location, timing, user behavior, and audience analysis.

26. The Tracking Pixels spyware activities described above are known as "fingerprinting." Browser fingerprinting is the process by which numerous routing, addressing, signaling, and device-specific data points automatically transmitted during electronic communications are collected and combined to uniquely identify a user's browser or device. Defendant's tracking technologies intercepted these automatically transmitted electronic signals at the time Plaintiff's browser communicated with Defendant's servers, thereby capturing source-identifying routing and signaling information generated during Plaintiff's electronic communications.

27. Plaintiff visited TRIMRX.COM after clicking Defendant's advertisement and was unaware of the above spyware. During Plaintiff's own communications with Defendant's website, Defendant's tracking technologies intercepted and recorded Plaintiff's own routing, addressing, signaling, and source-identifying information, including information generated by Plaintiff's browser during requests for webpages and related resources. It did so immediately upon Plaintiff's arrival at the website, before any cookie banner, consent mechanism, privacy notice, or disclosure appeared, before Plaintiff had any opportunity to provide or withhold consent, and before Plaintiff affirmatively agreed to any data collection. Plaintiff never knowingly or voluntarily consented to Defendant's interception or collection of this information.

28. The information collected was not merely aggregated website analytics. Defendant associated the captured routing and identifying information with Plaintiff's individual browser session and unique device, enabling Defendant and its third-party vendors to recognize Plaintiff as an individual visitor, associate multiple browsing sessions with Plaintiff, and create or supplement individualized behavioral profiles, showing that he had visited a telehealth weight loss website. As a direct result of Defendant's interception of Plaintiff's electronic communications, Plaintiff suffered an invasion of his legally protected privacy interests, unauthorized disclosure of his routing, addressing, signaling, and identifying information to multiple third parties, depletion of computing resources including processor cycles, bandwidth, battery life, and network resources, loss of exclusive control over his personal identifying information, and the creation of individualized profiles concerning Plaintiff's browsing behavior without Plaintiff's knowledge or consent.

29. According to the esteemed Brennan Center for Justice, data brokers are "the main purveyors of surveillance capitalism" that "collect, assemble, and analyze personal information to create detailed profiles of individuals, which they then sell to "financial institutions and insurance firms…Advertising companies… predatory loan companies, stalkers, and scammers…foreign actors…and law enforcement and other government agencies including the FBI and the IRS."). *See* https://www.brennancenter.org/our-work/research-reports/closing-data-broker-loophole (last accessed July 2026).

30. The Tracking Pixels (1) begin to collect information the moment a user lands on the TRIMRX.COM.com website before any pop-up or cookie banner advises users of the invasion or seeks their consent; and (2) request and transmit other identifying personal information to link a user's behavior on Defendant's website to the visitor's social media accounts and other devices.

31. Defendant's tracking technologies did not merely collect anonymous website statistics. Instead, they generated unique persistent identifiers that enabled Defendant and its vendors to recognize Plaintiff across browsing sessions, correlate Plaintiff's browsing

activity with additional information obtained from third parties, and construct individualized behavioral and marketing profiles specifically associated with Plaintiff's device and browser.

## IV. CLASS ACTION ALLEGATIONS

32. Plaintiff brings this action on behalf of all persons similarly situated and seek certification of the following class:

**All U.S. Citizens of any U.S. state who:**

**(1) used a California email address and received one or more commercial email advertisements promoting Defendant's products or services, whether sent directly by Defendant or by any person or entity acting on Defendant's behalf, including its affiliates, agents, or marketing partners; and/or**

**(2) visited Defendant's website located at TrimRx.com using a web browser or mobile device.**

33. The above-described class of persons shall hereafter be referred to as the "Class." Excluded from the Class are any and all past or present officers, directors, or employees of Defendant, any judge who presides over this action, and any partner or employee of Class Counsel. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with a motion for class certification, or at any other time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

34. **Numerosity.** The Class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, but Plaintiff is informed and believes, and thereon, alleges that there are at least 100,000 members of the Class.

35. **Typicality.** Plaintiff's claims are typical of those of other members of the Class, all of whom have suffered similar harm due to Defendant's course of conduct described herein.

36. **Adequacy of Representation.** Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff has retained attorneys who are experienced in the handling of complex litigation and class actions, and intend to prosecute this action vigorously.

37. **Predominance of Common Questions of Law or Fact.** Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

a. Whether Defendant sent unsolicited commercial e-mail to Class members;
b. Whether Defendant secretly tracked visitors to its website by installing pixels from data brokers.

38. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable.

39. **Ascertainability**. Defendant keeps computerized records of its sales and customers through, among other things, databases storing customer orders, customer order histories, customer profiles, customer loyalty programs, and general marketing programs. Defendant has one or more databases through which a significant majority of members of the Class may be identified and ascertained, and they maintain contact information, including email addresses.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Violation of Cal. Business & Professions Code § 17529.5

40. Plaintiff received the above unsolicited commercial e-mail at a California e-mail address within the three years prior to filing the Complaint at a California e-mail address.

41. As shown above, the spam violated one or more provisions of Section 17529.5.

42. Defendant is strictly liable for violation of Section 17529.5 for sending spam and is liable in the amount of $1,000 per spam per class member.

43. Defendant has not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of Section 17529.5 that would justify a reduction in liquidated damages.

44. Plaintiff and every Class member who received any violative e-mail are entitled to $1,000 in liquidated damages per e-mail from Defendant (Cal. Bus. & Prof. Code § 17529.5(b)(1)(B)(ii)), and to recover reasonable attorney's fees and costs (Cal. Bus. & Prof. Code § 17529.5(b)(1)(C)).

**SECOND CAUSE OF ACTION**

**Violations of the California Trap and Trace Law**

**Cal. Penal Code § 638.51**

45. California's Trap and Trace Law is part of the California Invasion of Privacy Act ("CIPA") codified at Cal. Penal Code 630, et. seq.

46. CIPA was enacted to curb "the invasion of privacy resulting from the continual and increasing use of" certain technologies determined to pose "a serious threat to the free exercise of personal liberties." CIPA extends civil liability for various means of surveillance using technology, including the installation of a trap and trace device.

47. A "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or

electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c).

48. California Penal Code § 638.51(a) provides that "a person may not install or use…a trap and trace device without first obtaining a court order.…"

49. Defendant uses multiple trap and trace process on the Website by deploying the Tracking Pixels on its Website because they capture routing, addressing and/or other signaling information of website visitors including Plaintiff.

50. Defendant did not obtain consent from Plaintiff or class members before using trap and trace technology to identify users of its Website and has violated section 638.51 and did not obtain a court order to do so.

51. CIPA imposes civil liability and statutory penalties for violations of section 638.51. Cal. Penal Code § 637.2.

**THIRD CAUSE OF ACTION**

**California Intrusion Upon Seclusion**

52. Defendant intentionally intruded upon the private affairs, concerns, and seclusion of Plaintiff by improperly accessing Plaintiff's personal information and using it for improper purposes, including by partnering with multiple data brokers to sell Plaintiff's and class members' private information to the highest bidder and them with behavioral advertising.

53. Defendant secretly caused multiple third-party surveillance companies to intercept Plaintiff's electronic communications at the moment they occurred, without notice or consent, for Defendant's commercial benefit. Defendant intentionally concealed these practices from consumers while enabling third parties to build persistent individualized profiles concerning visitors affiliation with a weight loss website. A reasonable consumer would find such undisclosed interception of personal electronic communications highly offensive

54. Defendant's intrusions upon the private affairs, concerns, and seclusion of Plaintiff and class members has been substantial and would be highly offensive to a

reasonable person and constitute an egregious breach of social norms, as is evidenced by countless consumer surveys, studies, and op-eds decrying the online tracking of website visitors, centuries of common law, state and federal statutes and regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, scholarly literature on consumers' reasonable expectations, and the penalties imposed by the FTC and other regulatory bodies.

55. Defendant operates a website devoted to prescription GLP-1 weight-loss medications and related health services. Plaintiff's visit to Defendant's website necessarily revealed that Plaintiff was potentially seeking information concerning medical treatment, weight management, prescription medications, or related health issues. The interception and disclosure of electronic communications revealing an individual's interest in medical treatment implicates significant privacy interests recognized by California law.

56. Independently of any statutory violation, Defendant intentionally caused Plaintiff's electronic communications to be intercepted, recorded, disclosed, analyzed, and commercially exploited by multiple third parties without Plaintiff's knowledge or consent. This conduct independently constitutes an intentional intrusion into Plaintiff's private affairs and confidential electronic communications and would be highly offensive to a reasonable person regardless of whether Defendant's conduct also violates the California Invasion of Privacy Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment against Defendant as follows:

a. For an order certifying that the action be maintained as a class action, that Plaintiff be designated as class representative, and that undersigned counsel be designated as class counsel;
b. For all available declaratory, legal, and equitable relief including injunctive relief;
c. For statutory damages;
d. For punitive damages;

e. For attorneys' fees and costs as allowed by law; and

f. For any and all other relief at law or equity that may be appropriate.

Dated: July 28, 2026

PACIFIC TRIAL ATTORNEYS, APC

By: */s/ Scott J. Ferrell*
Scott J. Ferrell
Attorneys for Plaintiff and the Proposed Class